# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Paul L. Schanhaar and Marilyn Schanhaar,

        Plaintiffs,

v.

EF Technologies, Inc., Georg Fischer Central Plastics, LLC,
and EnerSys Energy Products, Inc.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 08-5382 ADM/LIB

_____

John D. Undem, Esq., Undem Law Office, Grand Rapids, MN and Scott Wilson, Esq., Shorewood, MN, on behalf of Plaintiffs.

Kenneth H. Bayliss, Esq., Quinlivan & Hughes, P.A., St. Cloud, MN, on behalf of Defendant EF Technologies, Inc.

Kym Carrier, Esq., McAfee & Taft, PC, Oklahoma City, OK, on behalf of Defendant Georg Fischer Central Plastics, LLC.

Hal Shillingstad, Esq., and Ashley A. Wenger, Esq., Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Minneapolis, MN, on behalf of Defendant EnerSys Energy Products, Inc.

_____

## I.  INTRODUCTION

On August 25, 2010, the undersigned United States District Judge heard oral argument on Defendant EnerSys Energy Products, Inc.'s ("EnerSys") Motion for Summary Judgment [Docket No. 57]. Plaintiffs Paul Schanhaar ("Schanhaar") and his wife, Marilyn, (collectively "Plaintiffs") assert claims based on strict liability, negligence, and loss of consortium. For the reasons stated below, EnerSys's Motion for Summary Judgment is granted.

## II.  BACKGROUND[1]

In July 2005, Schanhaar, a superintendent for Northern Pipeline Construction Company, used a "gas pipeline electrofusion unit" (the "Processor").  Compl. [Docket No. 1] ¶ 7. Schanhaar became concerned that the Processor was not properly charging.  Id. ¶ 8.  Schanhaar checked the electrical connection by adjusting the power cord.  Schillingstad Aff. [Docket No. 60], Ex. A, Schanhaar Dep. at 70.  An explosion then occurred, injuring Schanhaar and permanently damaging his hearing.  Compl. ¶ 9.

The Processor was manufactured by EF Technologies, Inc. ("EF Technologies"), and was designed by EF Technologies in conjunction with Georg Fischer Central Plastics, LLC ("Central Plastics").  Shillingstad Aff., Ex. G, Def. Central Plastics's Answers to Pl.'s Interrogs. at 2-3. The Processor used lead-acid batteries manufactured and sold by EnerSys.[2]  See Shillingstad Aff., Ex. I, Shumard Dep. at 6-7.  Lead-acid batteries produce hydrogen gas during charging, with more gas produced if a battery fails or is overcharged.  Shillingstad Aff., Ex. B ("Svare Report") at 9-10, Ex. C ("Lindsey Report") at 3, Ex. D ("Anderson Report") at 2.  Hydrogen gas is combustible when mixed with air in concentrations above 4%.  Svare Report at 9.  Therefore, products containing encased lead-acid batteries typically provide a vent hole.  See Lindsey Report at 2.

EF Technologies claims to have had discussions with EnerSys regarding an appropriate

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

[2] The batteries at issue were manufactured and sold by Hawker, a predecessor to EnerSys. EnerSys is liable for Hawker's acts as a successor in interest.  See Niccum v. Hydra Tool Corp., 438 N.W.2d 96, 98 (Minn. 1989) (listing elements for successor in interest liability).  For the sake of clarity, Hawker's acts will be attributed to EnerSys throughout this Order.

vent hole size for the Processor.  Shillingstad Aff., Ex. F, William Goft Dep. at 112-13.
However, the final design did not incorporate the vent hole size allegedly recommended by
EnerSys–instead a larger vent hole was incorporated.  Id. at 113.  EF Technologies also claims
that EnerSys provided them with information regarding proper battery charging techniques and
algorithms.  Id. at 112.

It is undisputed that the explosion that injured Schanhaar was the result of a hydrogen-air
mixture being ignited by a spark from the power cord used to charge the unit.  Svare Report at 9-
10.  The spark came from the power cord's plug-in, located in close proximity to the vent hole.
Id. at 10.  No evidence of record suggests that EnerSys participated in any way in determining
the location of the vent hole.  Below is a photograph of the Processor, taken by Plaintiffs' expert
Svare, depicting the proximity of the vent hole to the plug-in.  The plug-in is the black hexagon,
the vent hole is the small black circle above the hexagon.



EF Technologies and Central Plastics claim that at least one of the lead-acid batteries in the Processor ("Battery H") was defective and producing "excess" hydrogen gas. Anderson Report at 3. However, no evidence has been offered that quantifies the hydrogen gas concentration at the time of the accident or under normal conditions.

Schanhaar has alleged five counts in the Complaint, three based on strict liability–manufacturing defect, design defect, and failure to warn–as well as negligence and loss of consortium. Additionally, Schanhaar's wife has brought a claim for loss of consortium. Plaintiffs named EF Technologies, Central Plastics, and EnerSys as defendants. EnerSys moves for summary judgment on all counts of the Complaint. Plaintiffs, EF Technologies, and Central Plastics all oppose the motion.

### III. DISCUSSION

#### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

This matter is a diversity action governed by state law. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). All parties agree that Minnesota tort law governs this matter.

**B. Count I–Manufacturing Defect**

In Minnesota, to prevail on a strict liability claim for a defective product, a plaintiff must show that "(1) the product was in . . . a defective condition, unreasonably dangerous for its intended use; (2) such defect existed when the product left defendant's control; and (3) the defect was the proximate cause of the injury sustained." Lee v. Crookston Coca-Cola Bottling Co., 188 N.W.2d 426, 432 (Minn. 1971). Minnesota has adopted the Restatement (Second) of Torts for analyzing strict liability cases. E.g., Farr v. Armstrong Rubber Co., 179 N.W.2d 64, 68 (Minn. 1970). Under the Restatement, "unreasonably dangerous" means that a product is dangerous "to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts § 402A cmt. i (1965).

EnerSys is entitled to summary judgment because the batteries it manufactured were not unreasonably dangerous. Like many products, batteries are recognized by the ordinary consumer as posing some danger. For example, most consumers take care when "jumping" an automobile due to the danger inherent in the lead-acid batteries used in many cars. The batteries at issue, therefore, are only "unreasonably dangerous" if they presented a danger beyond the contemplation of the ordinary consumer.

Assuming that Battery H was defective, it was not unreasonably dangerous because the ordinary consumer of lead-acid batteries would contemplate some hydrogen gas production. It is basic science that lead-acid batteries produce hydrogen gas. The nonmoving parties argue that

5

Battery H was producing "excess" hydrogen. However, no evidence has been produced to quantify the amount of hydrogen gas produced. Thus, no evidence of record suggests that Battery H was producing hydrogen to an extent beyond that which would be contemplated by the ordinary consumer. To the contrary, all evidence of record demonstrates that an ordinary consumer of lead-acid batteries should know that such batteries produce some hydrogen gas, and therefore pose some risk of explosion without proper ventilation.

With a finding that the batteries at issue were not unreasonably dangerous, the Court could end its strict liability analysis. However, it should be noted that even if the batteries were unreasonably dangerous, they were not the proximate cause of the explosion. Under Minnesota law, where, as here, an injury is the result of concurring causes, a cause is a proximate cause if it was a "substantial factor" in creating the harm. Flom v. Flom, 291 N.W.2d 914, 917 (Minn. 1980). Merely producing evidence that the battery was defective, as done here, is not enough. Evidence must tie that defect to excess hydrogen production and that excess hydrogen production to the explosion at issue. The only evidence of record is that hydrogen can ignite at concentrations in the air as low as 4%. No evidence has been adduced from which to evaluate the amount of hydrogen produced by the allegedly defective battery in comparison to a "normal" battery. Thus, without any evidence linking the explosion to the alleged defect in the battery, it cannot be said that the defect, if any, was a "substantial factor" in the explosion.

### C. Count II–Design Defect

As discussed above, the elements of a strict liability claim in Minnesota are: "(1) the product was in . . . a defective condition, unreasonably dangerous for its intended use; (2) such defect existed when the product left defendant's control; and (3) the defect was the proximate

6

cause of the injury sustained." Lee, 188 N.W.2d at 432. With respect to design defects, the manufacturers of component parts generally are not liable for the design of the final product into which their parts are incorporated. In re Temporomandibular Joint Implants (TMJ) Prods. Liab. Litig., 97 F.3d 1050, 1055 (8th Cir. 1996). However, an exception exists where the component part manufacturer substantially participates in the integration of its component into the overall design. Venmar Ventilation, Inc. v. Von Weise USA, Inc., Civ. No. 07-3132, 2009 WL 799610, *3 (D. Minn. Mar. 24, 2009). Merely providing mechanical or technical services or advice concerning a component part, however, does not constitute substantial participation. Restatement (Third) of Torts: Products Liability § 5 cmt. e (1998); see also Del Signore v. Asphalt Drum Mixers, 182 F. Supp. 2d 730, 745 (N.D. Ind. 2002) (holding that providing water volume for pond, maximum distance from pond to factory, and some pond dimensions did not constitute substantial participation as a matter of law where plaintiff was injured in pond on factory grounds).

Having previously concluded that the battery was not unreasonably dangerous as a matter of law, EnerSys may only be liable under a design defect theory if it substantially participated in the overall design of the Processor. Construing all disputed evidence in favor of the nonmoving parties, EnerSys's role was to provide charging technique recommendations and algorithms and recommend a vent hole size that was disregarded. Providing charging information to a buyer does not rise to the level of substantial participation. It is akin to providing technical advice and is similar to the information held not to constitute substantial participation in Del Signore. Further, recommending a vent hole size that is not incorporated into the final design cannot serve as the basis for liability. EnerSys cannot be found to have participated in the design of the

7

Processor if its design recommendation was disregarded. Finally, it was vent hole *location*, not size, that created a risk of explosion, and it is undisputed that EnerSys did not participate in the selection of vent hole location.

### D. Count III–Failure to Warn

Manufacturers have a duty to warn consumers as to dangers reasonably foreseeable in a product's intended use. McCormack v. Hankscraft Co., 154 N.W.2d 488, 496 (Minn. 1967). EnerSys had no duty to warn consumers of the Processor of the possibility of explosion because it could not have foreseen, as a matter of law, the incorporation of its batteries into a product with a vent hole in close proximity to an ignition source. It is undisputed that EnerSys repeatedly warned EF Technologies about the risks associated with hydrogen gas production and the need for ventilation. Furthermore, as discussed above, EnerSys did not participate in the design of the Processor. Therefore, EnerSys could not have reasonably foreseen that the Processor would have been designed in a manner that would have created such a risk of explosion, and had no duty to warn consumers of that risk.

### E. Count IV–Negligence

Under Minnesota law, strict liability and negligence substantially overlap in the realm of products liability. See Bilotta v. Kelley Co., Inc., 346 N.W.2d 616, 622 (Minn. 1984). To prevail on a negligence claim, a plaintiff must show: "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty being the proximate cause of the injury." Gradjelick v. Hance, 646 N.W.2d 225, 230 (Minn. 2002). Here, none of the nonmoving parties have adduced evidence or made arguments relating to negligence; all arguments have centered on strict liability, discussed above. Without any evidence of record regarding breach of

duty by EnerSys, Schanhaar cannot maintain a negligence action against it and EnerSys is entitled to summary judgment.

### F.  Count V–Loss of Consortium

Loss of consortium is a derivative claim, failure of the tort claims underlying the loss of consortium claim will preclude recovery.  Kohler v. Fletcher, 422 N.W.2d 169 (Minn. Ct. App. 1989).  Because EnerSys is entitled to summary judgment on Plaintiffs' other claims, their loss of consortium claims must fail as well.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that EnerySys's Motion for Summary Judgment [Docket No. 57] is **GRANTED.**

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  October 14, 2010.